**EASTWOOD LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, Appellee,**

v.

**EASTWOOD EDUCATION ASSOCIATION et al., Appellants.**

[Cite as *Eastwood Local School Dist. Bd. of Edn. v. Eastwood Edn. Assn.*, 172 Ohio App.3d 423, 2007-Ohio-3563.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–06–071.

Decided July 13, 2007.

Glenn D. Waggoner and Thomas C. Holmes, for appellee.

Christine A. Reardon and Bethany German Ziviski, for appellants.

SINGER, Judge.

{¶ 1} Appellants appeal a judgment of the Wood County Court of Common Pleas vacating an arbitration award in a labor dispute. For the reasons that follow, we reverse.

{¶ 2} The Eastwood High School girls' varsity basketball program is an elite program, amassing an impressive winning record for many years. This is one issue on which everyone involved in this case agrees. For a number of years prior to 2005, appellee, Eastwood Local School District Board of Education, employed Jim Gracyk as head coach of the girls' team. Gracyk is not a certificated teacher.

{¶ 3} In 2005, appellant Mitchell Freeman, an Eastwood Middle School teacher, applied for the girls' varsity head coaching position. Appellant Freeman had been an assistant varsity coach and head coach of the junior varsity girls' team.

{¶ 4} Upon receiving appellant Freeman's application, Eastwood's athletic director assembled an advisory group of four former coaches and players who interviewed Freeman. The athletic director later reported to appellee school board that the consensus of the group was that Freeman was not qualified to be Eastwood's girls' varsity head coach. The board then denied Freeman's application and eventually hired Gracyk for another year. Appellant Freeman took a job as girls' head coach at the smaller Old Fort High School.

{¶ 5} Appellant Freeman and his bargaining representative, appellant Eastwood Education Association, filed grievances of the board's decision. Appellants asserted that the question was whether Freeman was qualified to be a head coach, not a higher standard as Eastwood's head coach. Appellants maintained that Freeman clearly met the standard, in which case, according to appellants, the collective-bargaining agreement between the parties dictated that as a certificated employee, he was entitled to be awarded the supplemental coaching contract over a nonteacher.

{¶ 6} When appellee denied the grievances, appellants demanded arbitration as provided in the collective-bargaining agreement. The parties agreed to submit the dispute to veteran arbitrator Jonathan Dworkin.

{¶ 7} October 25, 2005, arbitrator Dworkin conducted an arbitration hearing on appellants' consolidated grievances, following which he issued an arbitration opinion and award in favor of appellants. The arbitrator found that appellant Freeman was qualified to be a girls' varsity head basketball coach. Moreover, the arbitrator concluded that, although the collective-bargaining contract did not specifically address the manner in which a board selects a coach, R.C. 3313.53 mandates hiring a bargaining-unit employee before considering a nonemployee for the position. R.C. 3313.53 is made applicable to this agreement through R.C. 4117.10, according to the arbitrator. On these findings and conclusions, the arbitrator ordered appellee to pay appellant Freeman the difference between the compensation he would have earned as Eastwood head coach and that which he received as head coach at Old Fort High School.

{¶ 8} Pursuant to R.C. 2711.10(D), appellee moved the Wood County Court of Common Pleas to vacate the arbitrator's award. Appellants responded with a cross-motion to confirm the award.

{¶ 9} On submission of the arbitration record and argument, the court vacated the arbitrator's award, concluding that the arbitrator "impermissibly relied on extraneous statutory requirements not included in the parties' Agreement." Because the application of R.C. 3313.53 was outside the contract, the court ruled, it could not form the basis of an arbitration award.

{¶ 10} From this judgment, appellants now bring this appeal, setting forth the following single assignment of error:

{¶ 11} "Whether the trial court committed reversible error when it granted Appellee Eastwood Local School District Board of Education's motion to vacate the arbitration award."

{¶ 12} Arbitration provides parties with a relatively fast and inexpensive alternative-dispute-resolution procedure, with the added advantage of providing some measure of relief to overcrowded court dockets. *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 82, 22 OBR 95, 488 N.E.2d 872. For this reason, it has long been the policy in Ohio to encourage arbitration, giving effect to every reasonable presumption in favor of "the regularity and integrity of the arbitrator's acts." *Campbell v. Automatic Die & Prods. Co.* (1954), 162 Ohio St. 321, 329, 123 N.E.2d 401, citing *Corrigan v. Rockefeller* (1902), 67 Ohio St. 354, 368, 66 N.E. 95, citing *Ormsby v. Bakewell* (1835), 7 Ohio 98.

{¶ 13} In furtherance of this policy, the legislature and the Supreme Court of Ohio have placed stringent restrictions on the circumstances in which a court may vacate an arbitrator's award. *Findlay Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 131–132, 551 N.E.2d 186. Statutorily, vacation of an arbitration award is permissible only if:

{¶ 14} "(A) The award was procured by corruption, fraud, or undue means.

{¶ 15} "(B) There was evidence partiality or corruption on the part of the arbitrators, or any of them.

{¶ 16} "(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

{¶ 17} "(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." R.C. 2711.10.

{¶ 18} It is held that the statute "limits judicial review of arbitration to claims of fraud, corruption, misconduct, an imperfect award, or that the arbitrator exceeded his authority." *Goodyear Tire & Rubber Co. v. Local Union No. 200* (1975), 42 Ohio St.2d 516, 71 O.O.2d 509, 330 N.E.2d 703, paragraph two of the syllabus.

{¶ 19} The strength of this doctrine was noted by *Goodyear*, which observed: "At common law, the courts have almost uniformly refused to vacate an arbitrator's award because of an error of law or fact. It has been held that the

arbitrator is the final judge of both law and facts, and that an award will not be set aside except upon a clear showing of fraud, misconduct or some other irregularity rendering the award unjust, inequitable, or unconscionable and that even a grossly erroneous decision is binding in the absence of fraud." (Citations omitted.) Id. at 522, 71 O.O.2d 509, 330 N.E.2d 703.

{¶ 20} A more recent formulation of the strictures of judicial review of an arbitration award posits that absent fraud, corruption, or specific types of misconduct, the presumption of validity inherent in the award limits "a reviewing court's inquiry [to] whether the arbitrator exceeded his authority." *Findlay Bd. of Edn.*, 49 Ohio St.3d 129, 551 N.E.2d 186, at paragraph one of the syllabus. "Once it is determined that the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious, a reviewing court's inquiry for purposes of vacating an arbitrator's award * * * is at an end." Id. at paragraph two of the syllabus. "An arbitrator's award draws its essence from a collective bargaining agreement when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful." *Mahoning Cty.*, 22 Ohio St.3d 80, 22 OBR 95, 488 N.E.2d 872, at paragraph one of the syllabus.

{¶ 21} At issue in the present matter is the application of R.C. 3313.53 to the collective-bargaining contract. The agreement contains a provision common to many agreements that "[t]he Arbitrator shall have no power to alter, add to, or subtract from the terms of the Agreement." See *Mahoning Cty. Bd.*, 22 Ohio St.3d at 84, 22 OBR 95, 488 N.E.2d 872. Appellee notes that the arbitrator's opinion itself states that the contract between the parties contains no provision governing the selection of coaches or other supplementary employees. The preference for certificated employees in these positions comes only from the statute, appellee insists. Consequently, its determinative value in this case is an addition to the negotiated terms of the agreement and is, resultantly, outside the arbitrator's power.

{¶ 22} R.C. 4117.10 provides:

{¶ 23} "(A) An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement. * * * Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees."

{¶ 24} Former R.C. 3313.53, effective when this matter arose,[1] provided:

{¶ 25} "(C) The board of education of any city, exempted village, or local school district may employ a nonlicensed individual to direct, supervise, or coach a pupil-activity program as long as that individual holds a valid pupil-activity program permit issued by the state board of education under [R.C. 3319.303(A).]

{¶ 26} "(D) *A nonlicensed individual* who holds a valid pupil-activity program permit *may be employed* under division (C) of this section *only after the school district's board of education adopts a resolution stating that it has offered such position to those employees of the district who are licensed individuals and no such employee qualified to fill the position has accepted it,* and has then advertised the position as available to any licensed individual who is qualified to fill it and who is not employed by the board, and no such person has applied for and accepted the position." (Emphasis added.)

{¶ 27} Appellee's argument that the statutory preference for certificated employees is not subject to arbitration because the statute is not part of the collective-bargaining agreement is unpersuasive. Except where a contrary intent is evident, the parties to a contract are deemed to have contracted with reference to existing law. The "laws existing at the time of the making of a contract enter into and form a part of the contract as fully as if expressly incorporated in the contract." 11 Lord, Williston on Contracts (4th Ed.1999) 205–206; *Bell v. N. Ohio Tel. Co.* (1948), 149 Ohio St. 157, 158, 36 O.O. 501, 78 N.E.2d 42. Moreover, the collective-bargaining agreement itself, in its severability provision, expressly makes the agreement subject to the law. Consequently, the trial court erred when it concluded that the agreement did not incorporate the provisions of the law.

{¶ 28} In its response to appellants' brief, appellee reargues several assertions of error in the arbitrator's award that it raised before the common pleas court. Appellate review of arbitration proceedings, however, is limited to an evaluation of the order issued by the common pleas court. *Lynch v. Halcomb* (1984), 16 Ohio App.3d 223, 224, 16 OBR 238, 475 N.E.2d 181. The only reason the common pleas court articulated for setting aside this arbitration award was what it perceived as the improper application of statutory law to the proceedings.

---

1. In 2006, the legislature amended the statute, inserting the following exception: "(D)(2) A board of education may renew the contract of any nonlicensed individual, currently employed by the board under division (C) of this section for one or more years, without first offering the position held by that individual to employees of the district who are licensed individuals or advertising the position as available to any qualified licensed individuals who are not currently employed by the board as otherwise required under division (D)(1) of this section." Am.Sub. H.B. 276, effective 3/30/07.

Because we have concluded that this position was in error, appellants' sole assignment of error is well taken.

{¶ 29} On consideration whereof, the judgment of the Wood County Court of Common Pleas is reversed. This matter is remanded to that court for further proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.

Judgment reversed
and cause remanded.

SKOW and OSOWIK, JJ., concur.