[Cite as *Toledo Clinic, Inc. v. Martinez*, 2019-Ohio-431.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Toledo Clinic, Inc.                                     Court of Appeals No. L-17-1293

      Appellee                                     Trial Court No. CI0201703142

v.

Bernardo Martinez, M.D.                          **DECISION AND JUDGMENT**

      Appellant                                     Decided:  February 8, 2019

* * * * *

Jared J. Lefevre and Adam S. Nightingale, for appellee.

John J. McHugh, III, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Defendant-appellant, Bernardo Martinez, M.D., has appealed the November 1, 2017 judgment of the Lucas County Court of Common Pleas which confirmed the arbitration award in favor of plaintiff-appellee, Toledo Clinic, Inc. ("TCI").  Because we find that the trial court did not err, we affirm.

{¶ 2} The relevant facts of this case are not in dispute and are as follows. On March 21, 2011, appellant, a board-certified vascular surgeon, and TCI entered into a Shareholder Employment Agreement ("SEA") which set forth the duties and responsibilities of the parties including compensation, billing policies, termination, and dispute resolution. The agreement required that appellant "purchase for cash (8) shares of common stock of the Toledo Clinic for $250 per share within sixty (60) days after the Effective Date." The SEA stated that the agreement would "terminate immediately for cause" if, inter alia, the stock shares were not purchased. During the term of his employment with TCI, appellant failed to make the stock purchase. The SEA also gave TCI the authority to adjust appellant's salary upward or downward based upon any surplus or deficits in appellant's financial status which reflected the income and expenses associated with his medical practice. From June 2011, through April 2013, appellant was compensated his full base salary of $10,000 per month. Beginning in May 2013, TCI began deducting amounts from appellant's monthly compensation due to a perceived deficit in appellant's account. Appellant's employment was terminated on March 31, 2015. Thereafter, TCI sent appellant a letter notifying him that he had a deficit income account of $245,920.73, and demanding payment.

{¶ 3} On October 26, 2015, after the parties were unable to resolve their dispute and pursuant to the SEA, TCI filed its demand for arbitration with the American Arbitration Association ("AAA") to recover the alleged deficit. Appellant filed a counterclaim requesting that he be reimbursed for the amounts deducted from his monthly base salary totaling $103,000, plus interest, and attorney fees and costs.

2.

{¶ 4} According to appellant, his counsel raised the issue of the jurisdiction of the arbitrator as early as March 22, 2016.  The arbitrator indicated that the issue had not been raised until March 20, 2017, a few weeks before the April 6, 2017 arbitration hearing.  At that time, the arbitrator stated that she would decide her own jurisdiction prior to addressing the merits of the parties' claims.  In response, appellant commenced an action in the Lucas County Court of Common Pleas, case No. CI0201702152, requesting "temporary, preliminary, and permanent injunctive relief prohibiting the arbitration." Appellant also raised various claims including breach of contract, unjust enrichment, and racketeering.

{¶ 5} On March 29, 2017, TCI filed a motion to dismiss the complaint arguing that because the arbitration had been pending for nearly two years and appellant had submitted to the arbitrator's authority, the trial court did not have jurisdiction to issue an injunction and proceed on appellant's claims.  The trial court agreed and dismissed the action on April 5, 2017, noting that the parties could challenge the arbitrator's jurisdiction at any point during those proceedings.  Appellant did not appeal.

{¶ 6} The arbitration hearing was held on April 6, 2017; on May 30, 2017, an interim award in TCI's favor was issued in the amount of $240,651.38.  On June 23, 2017, TCI was awarded an additional sun of $20,869.35, for attorney fees and expenses.

{¶ 7} TCI commenced the instant action on June 26, 2017, requesting that the court confirm the arbitration award pursuant to R.C. 2711.09.  On July 7, appellant filed a motion to vacate the arbitration award on the grounds that the arbitrator exceeded her authority in proceeding in the matter when the SEA containing the arbitration clause was

3.

not in effect at the time the dispute arose. Appellant specifically argued that because he failed to purchase the shares of TCI stock as mandated by the SEA, it terminated 60 days after the effective date as mandated by the language of the agreement.

{¶ 8} On November 1, 2017 the trial court granted TCI's complaint and application to confirm the arbitration award. The court confirmed the award finding that appellant failed to demonstrate that the arbitrator lacked jurisdiction or authority under R.C. 2711.10(D). This appeal followed.

{¶ 9} The following assignment of error is before the court:

Assignment of Error: The trial court erred substantially and prejudicially to Bernardo Martinez, M.D., in declining to make the statutory inquiry and findings mandated by Rev. Code Section 2711.02(B) before permitting arbitration to proceed, and in subsequently confirming the award entered upon such blemished jurisdiction.

{¶ 10} R.C. 2711.09 permits any party to an arbitration to apply to the court of common pleas to confirm the award. R.C. 2711.10(D) further provides that upon application, a court of common pleas shall make an order vacating an arbitration award if "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

{¶ 11} In determining whether an arbitrator exceed his or her powers, the trial court may not reach the merits of the award, it may only set aside the award pursuant to the factors under R.C. 2711.10. Ohio courts have consistently held that an arbitrator's award which draws its essence from the agreement of the parties, must be upheld unless it

4.

is unlawful, arbitrary or capricious. (Citations omitted.) *Cleveland Bd. of Edn. v. Intl. Bhd. of Firemen & Oilers Local 701*, 120 Ohio App.3d 63, 68, 696 N.E.2d 658 (8th Dist.1997). "When reviewing a decision of a common pleas court confirming, modifying, vacating, or correcting an arbitration award, an appellate court should accept findings of fact that are not clearly erroneous but decide questions of law de novo." *Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 153 Ohio St.3d 219, 2018-Ohio-1590, 103 N.E.3d 804, syllabus.

{¶ 12} Appellant contends that the trial court erred in determining that the arbitrator had the jurisdictional authority to proceed. Appellant's initial argument challenges the April 5, 2017 decision of the Lucas County Court of Common Pleas, in case No. CI-201702152, dismissing the action and, thus, denying his complaint for injunctive relief. Appellant argues that pursuant to R.C. 2711.02(B), the trial court was required to determine whether the matter was referable to arbitration; that the issue was not properly dismissed and left for the arbitrator to decide. When challenged with the argument that appellant failed to appeal that decision, appellant contends that the order on its face was not final and appealable. TCI further argues that R.C. 2711.02(B) implicates only those cases pending in a trial court that are proper subjects for arbitration.

{¶ 13} Reviewing the parties' arguments, we agree that R.C. 2711.02(B) is inapplicable to the present case. The section provides:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is

referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

{¶ 14} This section clearly provides that the court in which an action is pending can stay the action upon application of one of the parties pending arbitration in accordance with the agreement. It does not provide that a party can actively participate in arbitration and then "if the arbitration is still pending * * * change their legal remedy midstream." *Cercone v. Merrill Lynch, Pierce, Fenner & Smith*, 8th Dist. Cuyahoga No. 89561, 2008-Ohio-4229, ¶ 26. Thus, the only issue before this court is whether the trial court erroneously confirmed the arbitration award.

{¶ 15} The arbitration clause at issue provides that "[i]f a claim or controversy arises out of the *interpretation or enforcement* of the terms of this Agreement the parties hereto agree to have the matter arbitrated in Lucas County, Ohio, according to the rules of the American Arbitration Association." (Emphasis added.) The AAA employment arbitration rules specifically grant the arbitrator the authority to determine his or her own jurisdiction providing:

6. JURISDICTION

a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

6.

b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

c. A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

{¶ 16} Similarly, Ohio courts have held that "'[b]ecause the arbitration clause is a separate entity, it only follows that an alleged failure of the contract in which it is contained does not affect the provision itself.'" *Norman v. Schumacher Homes of Circleville, Inc.*, 2013-Ohio-2687, 994 N.E.2d 865, ¶ 34 (4th Dist.), quoting *ABM Farms v. Woods*, 81 Ohio St.3d 498, 502, 692 N.E.2d 574 (1998).

{¶ 17} In the proceedings below, the court concluded that the arbitrator's determination that the parties agreed to arbitrate pursuant to the SEA was not erroneous. This is so despite appellant's failure to purchase the required stock shares which the arbitrator concluded made the contract voidable, rather than void. Importantly, it is undisputed that appellant actively participated in the arbitration for nearly two years, filed an arbitration answering statement which asserted a counterclaim for unpaid salary, and further failed to file an objection to the proceedings under the AAA rules quoted above.

7.

Certainly, had appellant believed the SEA to have been void, including the arbitration provision, he could have contested it at inception of the arbitration proceedings. Appellant's assignment of error is not well-taken.

{¶ 18} On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.        _____
                                                     JUDGE

Arlene Singer, J. _____

Christine E. Mayle, P.J.        _____
CONCUR.                                                 JUDGE

_____
                                                   JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.